# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **RONNY SHORT,** | ) |
| **Plaintiff,** | ) |
| v. | ) CIVIL ACTION NO.: _____ |
| **3M COMPANY,** | ) |
| **Defendant.** | ) |

## COMPLAINT

**COMES NOW** Plaintiff, Ronny Short (hereinafter "Plaintiff") in the above-styled action, by and through his undersigned counsel, and hereby brings this Complaint against Defendant 3M Company (hereinafter "3M"), and alleges as follows:

## PARTIES

1. Plaintiff is, and was at all times pertinent to this Complaint, a resident of Jefferson County, Alabama and over the age of 18.

2. Defendant 3M, is a foreign company registered to do business in the State of Alabama, and was doing business in Jefferson County, Alabama at all times pertinent to this Complaint.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action in accordance with 28 U.S.C. § 1332(a), because Plaintiff if a citizen of the State of Alabama, 3M is a citizen of Delaware, and the

1

amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

4. Venue is appropriate in this Court[1] pursuant to 28 U.S.C. § 1391(e), in that a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of Alabama.

## FACTUAL ALLEGATIONS

5. This case concerns 3M's Dual-Ended Combat Arms Earplugs, version 2 (hereinafter "CA Earplugs"). The product is supposed to be combat ready, purporting to protect United States Airforce (hereinafter "USAF") service men and women from damaging and disabling noise during combat and other military missions, with each end of the plug providing a different kind of protection.

6. The "open" yellow end of the CA Earplugs is supposed to afford the service member "situational awareness" by protecting against the disorienting effects of loud impulse noises such as improvised explosive devices ("IEDs") and gun fire, yet still allow the service member to hear low-level noises critical to mission safety such as commands, footsteps and encroaching enemies.

7. The "closed" dark green end is supposed to work like traditional earplugs and block or dampen all noise.

8. 3M began selling hundreds of thousands of CA Earplugs to the United States military in or around 2003. From 2003 to 2015, CA Earplugs were issued to all deploying USAF service members. 3M was the exclusive manufacturer and supplier of the CA Earplugs.

---

[1] While venue is appropriate in this Court, Plaintiff is aware that this action should be deemed a "tag-along" action to be transferred to the Northern District of Florida as part of MDL 2885, *In Re: 3M Combat Arms Earplug Products Liability Litigation*.

9. The United States military acquired the CA Earplugs through a standard requisition process. The military issued solicitations that provided the minimum requirements the earplugs had to meet, and these became contractual requirements when 3M was awarded the contract.

10. In particular, the solicitations required that the earplugs be "suitable for use as hearing protectors for military personnel in chronically noisy environments," and further required, among other things, that the earplugs meet the following "salient characteristics":

    a. That the "[e]ar plugs shall be designed to provide protection from the impulse noises created by military firearms, while allowing the wearer to clearly hear normal speech and other quieter sounds, such as voice commands, on the battlefield";

    b. That each side of each earplug reduce sound by prescribed decibel levels:

        i. The green end was required to reduce sound 25-40 decibels (depending on the frequency of the sound), and

        ii. The yellow end was required to reduce sound 0-25 decibels (depending on the frequency of the sound);

    c. That the ability of the earplugs to reduce sound be tested in accordance with the American National Standards Institute

    d. That "[t]he ear plugs shall be free from all defects that detract from their appearance or impair their serviceability"; and

    e. That "[i]llustrated instructions explaining the proper use and handling of the ear plugs shall be supplied with each unit."

11. The solicitations further required 3M to inspect and test each CA Earplug to ensure that each one met all the "salient characteristics".

12. The CA Earplugs 3M supplied did not meet these requirements, and 3M was aware of this at the time of sale.

13. In 2000, before 3M began supplying the USAF with the CA Earplugs on a large scale, 3M conducted internal tests which revealed that the CA Earplugs were dangerously defective.

14. The United States Environmental Protection Agency (hereinafter "EPA") regulations, 40 C.F.R. § 211.201 *et seq.*, which were promulgated under the Noise Control Act, 42 U.S.C. § 4901 *et seq.*, require manufacturers like 3M to test and label the Noise Reduction Ratting (hereinafter "NRR") of hearing protection devices like the CA Earplugs.

15. 3M did not commission an independent lab to conduct the testing on the CA Earplugs as federal law and the military solicitations required.

16. 3M conducted the test on 3M employees and, after testing the earplugs on 8 of the 10 test subjects, the NRR test results turned out to be so far below what 3M expected for the "closed" green end of the CA Earplugs that 3M stopped all further testing on the green end.

17. 3M continued to test the "open" yellow end on all the test subjects. Such testing resulted in a -2 NRR for the "open" yellow end of the earplugs.

18. 3M reported the -2 NRR test report as an NRR of 0 and disclosed it on the CA Earplug's packaging and marketing materials.

19. 3M also launched an investigation into why the "closed" green end of the earplugs failed during the testing. It discovered that the earplugs were defective.

20. 3M discovered the CA Earplugs were defective for two reasons:

    a. The CA Earplugs were too short, which made it difficult to insert the earplug deep enough into the ear to achieve a proper fit; and

    b. The flanges on one side of the earplug interfered with the proper fit of the other side of the plug

21. 3M conducted another round of testing on or around February 2000, in which they tested the "closed" green end of the earplugs by inserting them with the yellow side's flanges folded back and made sure the plugs were inserted deeply into the ear. Because the yellow flanges were folded back, they no longer had a tendency to move back into their normal position. This test resulted in a NRR of 22, which is reported on the CA Earplugs packaging for the "closed" green end of the plug.

22. Because the yellow and green ends of the CA earplugs are symmetrical, both sides of the plug had the same problems achieving a proper fit and had a tendency to dislodge from the ear, thus the results of the January 2000 testing were unreliable.

23. 3M did not go back and retest the yellow side of the CA Earplugs by folding back the flanges on the "closed" green side.

24. Instead, 3M used the results of these two tests to report a NRR of 0 for the "open" yellow side of the plug, and a NRR of 22 for the "closed" green side of the plugs through 2015.

25. 3M did not take any steps to correct design defects discovered in the CA Earplugs in 2000.

26. 3M failed to include adequate instructions, illustrations, or explanations as to the proper use and handling necessary to achieve the advertised and warranted results.

27. 3M knew that such instructions, illustrations, or explanations were necessary because of the testing they conducted and the known product defects.

28. Plaintiff joined the USAF and entered into active duty in October 2001.

29. Prior to joining the military, Plaintiff had never suffered from tinnitus and severe headaches?

30. At the time of Plaintiff's service, the CA Earplugs were standard issue

31. Plaintiff was issued and used the CA Earplugs when firing weapons and around other large noises throughout hi service, up until his honorable discharge in 2014.

32. Plaintiff also used the CA Earplugs while serving on two tours during Operation Enduring Freedom and Operation Noble Eagle.

33. Plaintiff wore the CA Earplugs consistent with 3M's instructions.

34. Plaintiff was never instructed to fold back the flanges of the earplugs opposite the side Plaintiff inserted into his ear.

35. Since using CA Earplugs, Plaintiff has been diagnosed with tinnitus and suffers from severe headaches.

## TOLLING OF STATUTE OF LIMITATIONS

36. Under the Servicemembers Civil Relief Act, the statute of limitations is tolled during the period of Plaintiff's military service. *See* 50 U.S.C. § 3936.

37. The statute of limitations is also tolled because 3M actively concealed their defects in their product, and falsely represented the efficacy of the CA Earplugs.

## COUNT I

**STRICT PRODUCTS LIABILITY – DESIGN DEFECT**

38. 3M is the sole manufacturer and supplier of the CA Earplugs.

39. 3M has a duty to not sell or distribute defectively designed products.

40. At the time the CA Earplugs left 3M's control, they were defectively designed in that their design failed to prevent harmful sounds from entering Plaintiff's ear canal during reasonably anticipated military activity, which was the sole purpose of the product.

41. 3M falsely certified to the United States Government that the CA Earplugs complied with specifications required to prevent harmful sounds from entering the ear canal under conditions likely to occur in military service and during combat.

42. As a result of 3M's defective design, the CA Earplugs were unreasonably dangerous and unfit for their intended or expected use.

43. 3M knew or should have known of the defect in the CA Earplugs.

44. Plaintiff suffered injuries as a direct and proximate result of the use of the defectively designed CA Earplugs in their intended and expected manner.

**COUNT II**
**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

45. 3M is the sole manufacturer and supplier of the CA Earplugs.

46. 3M has a duty to warn foreseeable users of a dangerous product if it is reasonably foreseeable that an injury could occur from its use.

47. Plaintiff and those similarly situated reasonably expected the CA Earplugs to prevent harmful sounds from entering their ear canals and reasonably expected proper post-sale warnings or instructions to prevent such harm.

48. 3M did not provide Plaintiff with any post-sale warnings or instructions to that would prevent harmful sounds from entering Plaintiff's ear canal.

49. It was reasonably foreseeable to 3M that the CA Earplugs would be unreasonably dangerous if an adequate post-sale warning was not provided.

50. Plaintiff was injured as a direct and proximate result of 3M's failure to adequately and properly warn Plaintiff of proper use of the CA Earplugs.

## COUNT III
## NEGLIGENCE

51. 3M had a duty to comply with the certifications made to the United States Government about the qualities and performance characteristics of the CA Earplugs.

52. 3M breached this duty by failing to exercise the required degree of care in designing, developing, testing, manufacturing, marketing, and distributing hearing protection devices in a manner that provides the specified level of hearing protection to individuals in the military.

53. Plaintiff suffered damages and injuries that were reasonably foreseeable to 3M.

54. Plaintiff was injured as a direct and proximate result of 3M's breach of duty.

## COUNT IV
## BREACH OF EXPRESS WARRANTY

55. 3M expressly warranted, through its certifications to the military, that the CA Earplugs free from defects, complied with all applicable standards, and were suitable for use in military situations.

56. The CA Earplugs that 3M provided to Plaintiff and the USAF did not conform to the warranties expressed by 3M.

57. Plaintiff was injured as a direct and proximate result of 3M's breach of these express warranties.

## COUNT VI
## BREACH OF IMPLIED WARRANTY

58. 3M is a merchant of the CA Earplugs and similar hearing protection devices.

59. 3M knew or should have known the purpose for which the CA Earplugs were used.

60. 3M knew or should have known the buyer would rely on 3M to provide goods suitable for their stated purpose.

61. 3M breached these implied warranties by delivering a defective product that did protect Plaintiff's hearing, conform to the USAF's specifications and requirements for the product, provide proper instruction on how to ensure proper performance, and did not conform the representations stated on the product's label.

62. Plaintiff was injured as a direct and proximate result of 3M's breach of these implied warranties.

## COUNT VII
## FRAUDULENT MISREPRESENTATION

63. 3M falsely represented that the CA Earplugs would protect military service members hearing from loud and destructive noises and had the specific NRR disclosed on the package and/or labeling.

64. 3M knew this information was false because its own testing had revealed that the CA Earplugs were defective and, when used in the instructed manner, would not achieve the specific NRR advertised.

65. 3M provided no warning or instructions to properly use the CA Earplugs to achieve the specific NRR advertised.

66. Plaintiff reasonably relied on 3M's fraudulent misrepresentations and omissions.

67. Plaintiff was injured as a direct and proximate result of 3M's fraudulent misrepresentations.

## COUNT VIII
## FRAUDULENT CONCEALMENT

68. 3M fraudulently concealed the following material information from Plaintiff:

    a. CA Earplugs were defective;

    b. Due to the design defect, the CA Earplugs had a tendency to dislodge from the ear, rendering them ineffective for their desired purpose;

    c. The flanges on the opposite end of the earplug had to be folded back to prevent the earplug from dislodging during the use;

    d. 3M's NRR testing of the CA Earplugs was not accurate as advertised or presented.

69. 3M had a duty to provide this information to Plaintiff and the USAF prior to supplying them with the CA Earplugs.

70. Plaintiff was injured as a direct and proximate result of 3M's fraudulent concealment.

## COUNT IX
## NEGLIGENT MISREPRESENTATION

71. 3M, in the course of its business, supplied false information that the CA Earplugs were free of defects, would protect Plaintiff from loud noises, and had specific NRR ratings.

72. 3M supplied false and misleading information to induce the purchase and use of the CA Earplugs as part of Plaintiff's military service.

73. 3M failed to use reasonable care in communicating these false statements to Plaintiff.

74. The USAF and Plaintiff reasonably relied upon this information because they had no reason to suspect that 3M was providing misleading or inaccurate information.

75. Plaintiff was injured as a direct and proximate result of 3M's negligent misrepresentation.

## COUNT X
## WANTONNESS AND PUNITIVE DAMAGES

76. 3M owed Plaintiff a duty to exercise due and reasonable care in manufacturing and marketing the CA Earplugs.

77. In breaching the duties described above, 3M acted in a wanton, willful, and reckless manner.

78. 3M knew or should have known the danger to Plaintiff created by their conduct, practices, actions, and inactions.

79. 3M knew or should have known the probable impact, harm, damage, and injury their conduct would have on Plaintiff.

80. 3M's conduct, practices, and inactions evidence 3M's reckless disregard for Plaintiff's health.

81. 3M acted with oppression, fraud, and malice towards Plaintiff, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and purpose of punishing 3M for their conduct, in an amount sufficiently large to be an example to others, and to deter 3M and others from engaging in similar conduct in the future.

## RELIEF DEMANDED

**WHEREFORE, PREMISES CONSIDERED**, as the proximate cause of the foregoing wrongful acts, breaches of standard of care, and willful violations of the law, Plaintiff seeks an award of the following relief:

A. Compensatory and punitive damages in excess of the jurisdictional limits of this Court in such a sum as the trier of fact shall award based upon the wrongdoings alleged in this Complaint;

B. Award attorney fees, costs, and expenses incurred in connection with the litigation of this matter; and

C. Any such further, different or additional relief to which Plaintiff may be entitled to in the premises.

### PLAINTIFFS DEMAND TRIAL BY A STRUCK JURY

/s/ Dennis G. Pantazis, Jr.
Dennis G. Pantazis, Jr.
Attorneys for Plaintiff

**OF COUNSEL**
WIGGINS, CHILDS, PANTAZIS,
FISHER, & GOLDFARB, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0530
Facsimile: (205) 254-1500
Email:  dgpjr@wigginschilds.com

**SERVE DEFENDANT BY CERTIFIED MAIL AS FOLLOWS:**

3M Company
c/o Registered Agent
Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, Alabama  36104